**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-02523-DOC-DSR Date: July 16, 2026

Title: Richard Eduardo Ponte Gauna v. Secretary, Department of Homeland Security et al (A-Number: 246-883-782)

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING TEMPORARY RESTRAINING ORDER [2]**

On May 12, 2026, Petitioner Richard Eduardo Ponte Gauna filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Dkt. 1). On the same day, Petitioner also filed an ex parte application for a temporary restraining order ("App."). (Dkt.2). For the reasons stated below, the Application is **GRANTED**.

## I. BACKGROUND

### A. Facts

Petitioner is a Venezuelan national. He has no criminal history and is a father and husband. (Dkt. 1 at 12). He has been detained by U.S. Immigrations and Customs Enforcement (ICE) since July 24, 2025. (Dkt. 8 at 2). Petitioner received a final order of removal on February 2, 2026 but has remained confined in ICE custody since then. (Dkt. 21 at 2). Respondents have tried remove Petitioner to Mexico, despite it not being his country of origin, however Petitioner has not signed the Notice of Removal to Mexico. *Id*. Mexico has previously refused to accept third country detainees who do not willingly wish to be removed there. *Rios v. Noem et al.*, No. 3:25-cv-02866-JES VET (S.D. Cal. Nov. 5, 2025), ECF 13-1 ("Parsons Decl." at ¶ 11); *Pantoja v. Bondi*, 818 F. Supp. 3d 1227, 1233 (W.D. Wash. 2026) (relying on *Rios* and finding that petitioner had met his burden under *Zadvydas* where Petitioner refused to consent to 3rd country removal to Mexico); *Rodriguez-*

*Fernandez v. Bondi*, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026) (same); *Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-CV-04371-DAD-JDP (HC), 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026).

## II. LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) they are "likely to succeed on the merits" of the underlying claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

When the United States commences removal proceedings against an alien, the Attorney General may detain the alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). If the proceedings result in an order of removal, the Attorney General is required to remove the alien within 90 days, known as the removal period. 8 U.S.C. § 1231(a)(1)(A). The "removal period" begins on the latest of the following: "(i) [t]he date the order of removal becomes administratively final[;] (ii) [i]f the removal is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] [or] (iii) [i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2). Pursuant to Section 1231(a)(6), however, an inadmissible or criminal alien, or one who the Attorney General has determined will be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

Once a final order of removal has been issued, detention is governed under the INA, 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) does not authorize the government to detain an alien awaiting removal indefinitely after the statutory 90-day removal period. 533 U.S. at 689. Rather, the Supreme Court construed the statute to contain an implicit "reasonable time" limitation. *Id.* at 682. The Court held that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. "[F]or the sake of uniform administration in the federal courts," the Court held that six months was a presumptively reasonable period of detention. *Id.* at 701. "After this 6-month period, once the alien

provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

## III. DISCUSSION

### A. Petitioner has established a likelihood of success on the merits.

The first Winter factor, "the most important factor" in assessing whether injunctive relief should be granted. *Env't Prot. Info. Ctr. v. Carlson,* 968 F.3d 985, 989 (9th Cir. 2020). Here, the Court finds Petitioner has established a likelihood of success on the merits.

Petitioner argues that after being held for over five months in ICE custody despite having a final order of removal, his removal is not reasonably foreseeable under *Zadvydas*. ICE has not provided any indication that Mexico is ready to accept the Petitioner and Respondents have not responded to Petitioner's application with evidence that Petitioner's removal is reasonably foreseeable. (See generally, *Timina v. Wofford*, 2025 WL 3228138, *3 (E.D. Cal. 2025) (finding that respondents have not put forth sufficient evidence to rebut petitioner's showing when respondents "do not provide any details whatsoever regarding what actions have been and are being taken in pursuing Petitioner's removal to a third country"). Nor is there evidence of a post-order custody review by ICE determining that Petitioner's continued custody is warranted.

Even if a Petitioner has been in detention for less than six months after their post-final order of removal, there can still be a successful *Zadvydas* claim where there is a lack of reasonable foreseeability of removal. *Zavvar v. Scott*, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025) (collecting numerous cases).

> Courts that have addressed the issue of whether there is a significant likelihood removal of a detainee in the reasonably foreseeable future have found 'no significant likelihood of removal' in four types of cases. One, where no country will accept the detainee, [citation], two, where the detainee's country of origin refuses to issue a travel document for the detainee, [citations], three, where there is no removal agreement between the detainee's country of origin and the U.S., [citation], and four, where there was no definitive answer from the target country after several months as to whether it would issue travel papers for a detainee [citation].

*Nma v. Ridge*, 286 F. Supp. 2d 469, 475 (E.D. Pa. 2003); *see Nasr v. Larocca*, No. CV 16-1673-VBF (E), 2016 WL 3710200, at *1 (C.D. Cal. June 1, 2016), report and recommendation adopted, No. CV 16-01673 VBF-E, 2016 WL 3704675 (C.D. Cal. July 11, 2016) (adopting *Nma's* rubric).

All four factors are met here. In short, Petitioner is likely to prevail on the merits that his continued detention is no longer authorized under § 1231(a)(6), making petitioner's continued detention unreasonable and a serious violation of his due process rights. See *Zadvydas*, 533 U.S. at 690, 121 S.Ct. at 2498 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process

Clause forbids the Government to 'deprive' any 'person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects.).

**B. Without injunctive relief, Petitioner will likely suffer irreparable harm.**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where "the alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted). The Court therefore finds that Petitioner has been and would continue to be irreparably harmed by the deprivation of his liberty in violation of his due process rights.

**C. The balance of hardships and public interest is in Petitioner's favor.**

The last two Winter factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The violation of Petitioner's constitutional rights cannot be justified in this matter. *See Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks omitted); *Vargas v. Jennings*, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws[,] . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

## IV. DISPOSITION

Based on Petitioner's showing of likelihood of success on the merits and irreparable harm, the minimal harm to Respondents, and the public's interest in upholding the Constitution, the Court **GRANTS** Petitioner's Application.

The Court **ORDERS** that:

1. Respondents release petitioner forthwith under reasonable conditions of supervision provided under 8 U.S.C. § 1231(a)(3).
2. Respondents may not re-detain Petitioner without following all relevant policies and procedures, including those set forth in 8 C.F.R §§ 241.

3. Respondents shall file their opposition to the Preliminary Injunction Application by no later than August 6, 2026. Failure to file their opposition by the deadline set forth above shall be deemed as consent to the granting of the Preliminary Injunction Application.
4. Petitioner shall file his Reply in support of his Preliminary Injunction Application by no later than August 13, 2026.
5. The court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Preliminary Injunction Application or take the Preliminary Injunction Application under submission.